## 'DUOS et ux. v. GRAVIER & HARPER.*
### No. 1934.

Court of Appeal of Louisiana.
First Circuit.

Jan. 11, 1939.

W. C. Perrault, of Opelousas, for appellants.

George L. Fontenot, of Ville Platte, for appellees.

DORE, Judge.

The plaintiffs sued the defendants in tort and, in the alternative, under the Workmen's Compensation Act, Act No. 20 of 1914, for the death of their unmarried minor son, who died on December 17, 1937, as a result of injuries sustained by him on December 13, 1937, while in the employ of defendants. The District Court sustained an exception of no cause of action filed by the defendants as to the action in tort, and the case was tried as one governed by the Workmen's Compensation Act.

The lower court rendered judgment in favor of the plaintiffs for sixty-five per cent. of the decedent's weekly wages at the time of his death, that is $7.80, for three hundred weeks, together with legal interest on each delinquent payment beginning from December 13, 1937, together with statutory burial expenses and costs. The defendants have appealed.

The defendants-appellants contend: (1) That the lower court erred in its application of the provisions of the Compensation Act in determining the amount of compensation to which decedent's parents are entitled, which defendants claim should be $3 per week for 300 weeks; and (2) that since a proper application of the Act must necessarily show that the parents are not entitled to an award of the maximum compensation, and since the record contains a frank admission by the fa-

*Rehearing denied — So. —.

ther of the decedent that they were never willing to accept compensation from the defendants for an amount less than the maximum, the costs of the proceedings should be cast on the plaintiffs.

The main question for our determination is whether or not the lower court erred in allowing compensation to the plaintiffs at the rate of $7.80 per week for 300 weeks.

The first question to determine, in arriving at a decision of the main question, is what was the weekly wage of the deceased at the time of his injury and death. It is uncontroverted that he was receiving twenty-five cents per hour on an eight hour day basis. The defendants' superintendent states that the common laborers were supposed to work five and one-half days per week, and counsel for defendants contends that the weekly wage was therefore $11. However, the superintendent admits that the laborers did some times work on Saturday afternoons, or six full days per week; and the payroll shows that the deceased worked more than eight hours per day and more than five and one-half days per week for several weeks. The only part of the contract of employment definitely shown is the wage of twenty-five cents per hour, and, under this situation, we believe the normal week of eight hours per day and six days per week must be used in calculating the weekly wage, under the authority of Rylander v. Smith & Son, 177 La. 716, 149 So. 434; Jones v. Southern Advance Bag & Paper Co., La.App., 157 So. 754. We conclude, therefore, that the lower court correctly found from the evidence that the weekly wage for the purpose of fixing compensation should be $12.

The next problem in the case is the method to be used in calculating the compensation due the parents. It is shown by the evidence that the deceased minor gave all of his earnings to his parents, and that his wages were pooled with those of his father, who earned $12 per week, and these two amounts were used to support the parents, the deceased minor and another minor child, who composed the family. It is obvious that the parents were not wholly dependent on the decedent for support, as the father contributed the same amount to the common fund as did the deceased son; but it appears equally as obvious that they were dependent on the decedent's *whole income,* which, aside from the fact that the wages of a minor

lawfully belong to the parents, was willingly and cheerfully contributed by him.

The defendants concede that the decedent contributed his whole income to the plaintiffs, but maintain that the only income which is definitely established by the evidence to have been earned by him in the year prior to his death is the sum of $108.72 received by him during his employment by them in the period from September 16, 1937 to the date of his injury. Since our decision will not rest on whether or not the income earned by the decedent in the year prior to his death was more than contended by defendants, we do not feel that a detailed discussion of the evidence on that point is necessary; but, from the record, unsatisfactory though it is, we believe that the decedent's income in the year prior to his death, derived from his employment for a period of 26 weeks and 5 days immediately preceding his injury (the decedent having been in school for the period of 25 weeks and 2 days prior thereto), was the sum of $327.

From the evidence, therefore, we find the following facts: The decedent earned in the year prior to his death the sum of $327, all of which he contributed to the plaintiffs. His average weekly income and contribution during his period of employment (26 weeks and 5 days) was therefore slightly above $12 per week. His average weekly income and contribution during the whole 52 weeks prior to his injury (including a period of 25 weeks and 2 days when he was in school and not employed) would be $6.29. His weekly wage at the time of his injury was $12; and the compensation payable for the benefit of parents wholly dependent would be 65% of $12, that is, $7.80, for a period of 300 weeks.

With these facts determined, our next problem is the application of Section 8, Subsection 2, of the Workmen's Compensation Act, Act No. 242 of 1928, p. 358, which reads as follows:

"For injury causing death within one year after the accident there shall be paid to the legal dependents of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as hereinafter provided [65% where both father and mother are the surviving legal dependents], for a period of three hundred weeks. If the employee leaves legal de-

pendents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid as aforesaid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident."

On the facts and figures as found by us, and letting X stand for the compensation to be paid, counsel for defendants contends that the application of the section would result in the following equation:

$$X : \$7.80 \text{ as } \$6.29 : \$12.00$$
$$12X \text{ equals } \$49.067$$
$$X \text{ equals } \$4.099$$

In support of that formula, counsel for defendants cites the cases of Little v. Crow-Edwards Lumber Co., 9 La.App. 465, 121 So. 219, and Dillon v. Traders & General Ins. Co., La.App., 183 So. 553. These cases, however, differ from the case before us in two respects: (1) In the cases cited, the deceased employees had been employed during the whole year prior to their death and made contributions spasmodically during the year, and the average weekly contribution was the total contribution divided by 52, the number of weeks in the year; whereas in the instant case it appears clear from the evidence that the decedent was employed only during the last 26 weeks and 5 days in the year prior to his death and consistently contributed all of his earnings; and (2) in the cases cited the partial dependents of the deceased employees were dependent on and received only a *part* of their earnings, whereas in the case before us the dependents were dependent on and received the *whole* of decedent's earnings. Counsel for defendants has failed to cite any case presenting the same situation as the case before us wherein the formula advanced was applied, and we have failed to find any in Louisiana jurisprudence.

 If a proper application of the section necessitates a computation of the average weekly contribution, as was done in the cases cited supra, it seems to us that the intent of the statute when the words "in the year prior to his death" are used, is to limit the length of time back that we can go in determining the average weekly contribution—not that the average weekly contribution must be taken for the whole fifty-two weeks where circumstances are such that to do so would be unreasonable. In the case before us it seems unreasonable to tack on a period of more than twenty-five weeks during which the decedent was a school boy to his employment period thereafter in determining his average weekly wage and contribution in the year prior to his death. It seems to us that it is reasonable to say that the average weekly earnings and contribution of the decedent in the instant case in the year prior to his death was his total income divided by the number of weeks he was employed, which, of course, would result in an average of more than $12 per week, and would result in the equation:

$$X : \$7.80 \text{ as } \$12.00 : \$12.00$$
$$X \text{ equals } \$7.80$$

We realize, of course, that it would not be reasonable to apply the suggested formula in all cases where the employee was employed during only part of the year prior to his death. The facts of a particular case might show that the employee, because of his temperament or habits, of his own free will, did not work at various times during the year and deliberately created periods of idleness which naturally would reduce his potential contributions all through the years to come. This situation, however, does not exist in the instant case, and the correct barometer of decedent's future contributions, had he lived, in the instant case is his average contribution during the time he was employed.

An interpretation similar to the above is that suggested in the case of Fuhrmann et al. v. Keenan, 11 La.App. 66, 120 So. 403, Court of Appeal of Louisiana, Orleans, Feb. 11, 1929, wherein Judge Janvier, in passing on the question of the compensation to be paid to the partially dependent father of the deceased employee, stated [page 404]: "Decedent at the time of his death was earning $15.40 per week. Sixty-five per cent. of this is $10.01. This is the weekly amount to which claimant would have been entitled had he been wholly dependent. In order to determine the amount to which he would be entitled as partially dependent, we must ascertain what part of his earnings during the year previous to his death he sent to claimant. During the year previous to his death, he seems to have worked one-half the time at an average weekly wage of $15.40. He therefore, during that year, earned $400.-

40. Of this amount he sent to claimant $25, or one-sixteenth. If the minimum set forth in the statutes were not applicable here, claimant would therefore be entitled to weekly compensation for 300 weeks, amounting to one-sixteenth of $10.01, or 62½ cents per week. * * *"

Applying the formula suggested therein to the facts we find in the instant case, we would have the following equation:

*\* \* \* The average weekly wage contributed to the common family fund, held and managed by the mother, furnishes the basis for determining the amount of compensation due the appellee, without being diminished as contended for by the appellant. \* \* \* While appellee was only partially dependent on the deceased for support, the facts show that he turned in to the common fund 100% of his earnings.*

$$X : \$7.80 \text{ as } \$327 \text{ (total contributions in} : \$327 \text{ (total earnings in year}$$
$$\text{year prior to death)} \qquad \text{prior to death)}$$
$$\text{or} \quad X : \$7.80 \text{ as } 1 : 1$$
$$X \text{ equals } \$7.80$$

Or, since the decedent contributed 100% of his earnings in the year prior to his death, the dependents should receive 100% of the maximum compensation.

█ It is our view that the term legal dependents who are only partially dependent under the provisions of the section mean dependents who are dependent on part only of the employee's weekly earnings. That construction of the term would seem to be the one placed so far by the courts in the cases heretofore decided in Louisiana where in none of them does it seem that the employee contributed the whole of his earnings which were pooled with the earnings of others in the same household and used for the support of the family. We have made a search of cases outside of Louisiana which might throw some light on the question before us, and cite the following which appears applicable to the situation herein:

In proceedings for compensation under the Indiana Workmen's Compensation Act, it appeared that the deceased minor son turned over all his earnings to his mother, receiving in return a home, board, clothes and incidental expenses. An award was made to the mother based on deceased's total average weekly wages without deduction for the benefits he received from his mother, and it was contended by the employer that the award was erroneous because not based on the amount left after deducting for the benefits received. Overruling the contention the court said: "The facts show that all the wages of the deceased were placed in the common fund. Such being the case, the basis of the award was not changed by the fact that he as well as other members of the family received support from the common fund.

*Such being the case, the compensation is the same as it would have been had the facts shown appellee totally dependent on the deceased for support."* People's Hardware Co. **v.** Croke, 66 Ind.App. 340, 118 N.E. 314.

The italicized portion of the foregoing quotation would seem to us to bear out our idea of the meaning of the term "partial dependents" in our statute as we have stated it. In other words, where the dependents receive only a part of the earnings of the deceased employee weekly, they are partial dependents only, but when they receive 100% of his earnings weekly, and these earnings go to support the whole family out of the common fund established with them, then the dependents are regarded as no longer partial but wholly dependents and as such are entitled to the same compensation as that class of dependents, which, of course, is 65% of the weekly wage, at the time of the accident causing the death of the employee, for three hundred weeks, and that regardless of the length of time during which they received the 100% of his earnings.

In an annotation in 86 A.L.R. 890, we find a Missouri case which seems to us to make the same holding as the case from which we have quoted. That is the case of Triola v. Western Union Telegraph Co., 224 Mo.App. 258, 25 S.W.2d 518. The annotation reads as follows:

"Where decedent contributed all of his earnings to partial dependents, they are entitled to the total death benefit payable under the act, which is equal to that payable to total dependents. (Citing the case, the annotation then continues) wherein the total death benefit was allowed to the parents of the decedent, on a showing that

the family consisted of ten persons, only three of whom, including the decedent, were wage earners, and that the decedent had contributed his entire earnings toward the support of the family, of which he was a member."

In further support of our view we quote the following significant statement in Schneider's Workmen's Compensation Law, Vol. 2, page 1239:

"There is no difference between the amount payable to parents, regardless of whether they are considered total or partial dependents, when the son turned over all of his earnings to the family fund. In other cases of partial dependency the amount of compensation is to be measured by the actual 'average amount contributed weekly' instead of the technical 'average weekly wage.'"

There are numerous cases cited in support of the statement, including the case of Bloomington-Bedford Stone Company v. Phillips, 65 Ind.App. 189, 116 N.E. 850, the annotation of which, found in 16 N.C.C.A., page 185, reads as follows:

"Where a parent received all of the wages of his minor son, and the compensation act provides that the parent shall receive, for a period of three hundred weeks, that proportion of what he would have received, had he been wholly dependent, as that which he actually received from his deceased son bears to his son's annual earnings at his death, the court held that there was no difference in the amount the parent should receive as a total or a partial dependent."

For the reasons stated, it is our opinion that the plaintiffs herein are entitled to the same compensation as dependents who are wholly dependent upon the earnings of their deceased son; that is, $7.80 for the period of three hundred weeks, and the judgment of the lower court is therefore affirmed.

OTT, Judge (concurring).

In my opinion, the amount of compensation to which the parents of the deceased are entitled as partial dependents is correctly determined as though they were wholly dependent, for the reason that the deceased contributed all of his earnings to their support, and, under the authorities cited in the opinion, the interpretation to be placed on the statute providing a method for computing compensation for partial dependents applies only in those cases where the deceased contributed only part of his wages to the support of the dependents.

I am unable to agree, however, with that part of the opinion wherein it is indicated that, if the deceased employee was employed for only a part of the year prior to his death, the court is authorized to take the average weekly contributions of the deceased during that period to serve as a basis in forming the proportion with his earnings at the time of the accident. It seems to me that the statute contemplates that the proportion between the amount contributed by the deceased employee in the year prior to his death and the earnings of the deceased at the time of the accident means that the entire contributions for the previous year are to be taken as one part of the proportion and his earnings for the year based on his weekly wage at the time of the accident are to be taken as the other part.

In other words, I think that in those cases where the deceased was making contributions to his dependents of only a part of his earnings at the time of the accident, the amount of compensation provided for those wholly dependent is to be reduced in the same proportion as the total amount that he contributed the year prior to his death—regardless of the time he worked during that year—bears to the earnings of the deceased for that year based on his weekly wage at the time of the accident. In my opinion, that is the construction that was placed on the statute in the cases of Little v. Crow-Edwards Lumber Co., 9 La.App. 465, 121 So. 219, and Dillon v. Traders & General Ins. Co., La.App., 183 So. 553, cited in the opinion.

I concur in the decree.